**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

ARACELLYS MORALES,
and other similarly situated individuals,

        Plaintiffs,

                                   CASE NO.:14-23881-CIV-MOORE/MCALILEY

v.

MERCANTIL COMMERCEBANK FLORIDA
BANCORP INC., and JOHN DOES 1-10,

        Defendants.

_____/

**DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL**

Defendant Mercantil Commercebank Florida Bancorp Inc. ("Defendant" or "Mercantil"), by and through its undersigned counsel, hereby respectfully moves this Court for an Order disqualifying counsel for Plaintiff Aracellys Morales ("Plaintiff"), Anthony M. Georges-Pierre, Esq., and his firm, Remer & Georges-Pierre, PLLC (collectively, "Plaintiff's Counsel"), from representing Plaintiff and/or any class members in this matter. For the reasons explained below, an irreconcilable and unwaivable conflict of interest exists between Plaintiff and the class members in this case on the one hand, and Plaintiff's Counsel's other clients in another pending case against Defendant on the other hand.

In further support of this Motion, Mercantil states as follows:

## I.    INTRODUCTION

Mercantil, a private banking corporation headquartered in Florida, seeks to disqualify Plaintiff's Counsel from representing Plaintiff in this case due to an irreconcilable and unwaivable conflict of interest on Plaintiff's Counsel's part. Specifically, Plaintiff's Counsel currently represents two different types of Mercantil employees in two separate actions he has

filed against Defendant in the Southern District of Florida alleging violations of the Fair Labor Standards Act ("FLSA").   In the case at bar, Plaintiff is a former Teller who claims that Mercantil failed to pay her and a class of other non-exempt Tellers for pre-shift and/or post-shift work.   In another case pending before the Court, *Betancourt v. Mercantil Commercebank Florida Bancorp Inc.*, Case No. 1:14-cv-23863 ("the *Betancourt* case"), Plaintiff's Counsel represents Managers and Assistant Managers who claim that Mercantil misclassified them as exempt and therefore unlawfully failed to pay them overtime compensation.

Plaintiff's Counsel's concurrent representation of these two groups of Mercantil employees constitutes an irreconcilable and unwaivable conflict of interest.   As the highest-ranking employees in Mercantil's branches on a daily basis, Managers and Assistant Managers are responsible for assuring that Mercantil's policies prohibiting off the clock work are followed. In fact, Managers and Assistant Managers are responsible for, *inter alia*, scheduling, supervising, and overseeing the branches' non-exempt employees' work start and stop times, ensuring that their time cards are accurate, and making manual overrides in the time keeping system when necessary.   Thus, Plaintiff's Counsel's arguments in this case pit the non-exempt branch employees against the Managers and Assistant Managers who Plaintiff's counsel represents in the *Betancourt* case.   Indeed, in Plaintiff's Motion for Declaration of a Class Action (D.E.11), Plaintiff's Counsel argues that Mercantil, "*through its managers or other agents,* has engaged in a company-wide policy of requiring uncompensated work." (*Id.*, at pp. 6, 8)   Thus, Plaintiff's Counsel's representation of both the victims and the perpetrators of the alleged violations of law creates an unethical and unlawful conflict of interest.   Furthermore, this conflict of interest materially prejudices Mercantil by critically limiting its ability to investigate the claims asserted

in either case and creates a very real possibility for collusion between these two groups of employees at Mercantil's expense.

For the reasons set forth herein, Plaintiff's Counsel's representation of these two groups of Mercantil employees cannot be permitted, and disqualification is appropriate.

## II.     STATEMENT OF FACTS

### A.     Mercantil's Operations and Employment Policies

Mercantil is a nationally-chartered financial institution and one of the largest privately-held banks in South Florida. (Declaration of Jaclyn Luis, attached hereto as Exhibit 1)  Mercantil has been offering financial services to the communities in Florida and other states for over 30 years. (*Id.*, at ¶ 3)  Mercantil is headquartered in Coral Gables, Florida. (*Id.*)

#### 1.     Mercantil's Branch-Level Employees

At the branch level, Mercantil employs, *inter alia*, the following types of employees: Branch Sales/Service Manager ("Manager"); Assistant Sales/Service Manager (either level I or II) ("Assistant Manager"); and Tellers (levels I, II, III and/or Senior). (*Id.*, at ¶ 4)

##### a.     Mercantil's Managers Are Responsible For Managing Other Branch Employees, Such As Tellers, And Ensuring That They Comply With Overtime Laws and Policies

Mercantil's Managers are responsible for "manag[ing] all functions [of the branch] and [have] ultimate responsibility for achievement of branch profitability, sales goals, operations activities **and branch staff**." (See Job Description at Exh. 1-A) (emphasis added).  With respect to the branch staff such as Tellers, Managers must "[o]versee administration of all personnel issues." (*Id.*)  Managers also must ensure that the branch "is in compliance with all Bank policies and procedures." (*Id.*)   In particular, Managers "[w]ork[] with Human Resources, interview, hire and terminate branch team members" and "[c]onduct performance evaluations and salary reviews for all branch personnel." (*Id.*)  Managers also "assess, reduce, eliminate or control any

3

current or prospective risks . . . arising from violations of, or noncomformance with, laws, rules, regulations, prescribed practices, internal policies and procedures or ethical standards." (*Id*.) Mercantil also requires that Managers "[m]ust be able to effectively hire, discipline and manage [the] assigned workforce." (*Id*.) **Managers directly supervise Assistant Managers, who directly supervise Tellers and other non-exempt branch employees**. (*Id*.)

Managers ultimately are responsible for ensuring that the employees they supervise, including the Assistant Managers and Tellers, comply with Mercantil's policies and with all laws, including, but not limited to, laws regarding overtime hours worked and overtime compensation. As such, Managers are accountable for any failure by Mercantil's branch employees to comply with such policies and laws. By the same token, both Assistant Managers and Tellers may have critical knowledge as to the extent to which Managers supervised and directed them.

b.      <u>**Mercantil's Assistant Managers Are Responsible For Managing Tellers And Ensuring That They Comply With Overtime Laws and Policies**</u>

The Assistant Managers take lead responsibility relative to day-to-day operations and ensuring the branch meets all compliance and Bank policy and procedure expectations." (Exh. 1-B) Assistant Managers are required to "[m]onitor employee activities, assist with problems and take action when necessary to ensure work quality standards and planned work schedules are maintained." (*Id*.) Assistant Managers must "[p]articipate in training and meetings on sales and operation issues with [the Manager] and staff. In the absence of [the Manager], [Assistant Managers] take[s] lead responsibility for meetings." (*Id*.) Assistant Managers also must "assess, reduce, eliminate or control any current or prospective risks . . . arising from violations of, or noncomformance with, laws, rules, regulations, prescribed practices, internal policies and procedures or ethical standards," and they also must "be able to effectively hire, discipline and

4

manage [the] assigned workforce." (*Id*.) **Assistant Managers directly supervise Tellers**. (*Id*.) Therefore, Assistant Managers are also accountable for any failure by Mercantil's non-exempt branch employees to comply with any policies or laws. Consequently, non-exempt branch employees, such as Plaintiffs in the instant action, -possess critical knowledge as to the extent to which Assistant Managers supervised or directed them. That knowledge goes to the heart of the issue in the Betancourt case, in which the alleged class of Assistant Managers claim they were misclassified as exempt under the FLSA.

c.     **Mercantil's Tellers Perform Their Job Duties Under The "Close Supervision" of Managers and Assistant Managers**

Mercantil's Tellers work "[u]nder close supervision" of Managers and Assistant Managers to "receiv[e] cash deposits and non-cash items from customers," among other duties. (Exh. 1-C) Tellers are required to "adhere[] to Bank policies and procedures," and they must also "assess, reduce, eliminate or control any current or prospective risks . . . arising from violations of, or noncomformance with, laws, rules, regulations, prescribed practices, internal policies and procedures or ethical standards" (*Id*.) Inasmuch as Tellers are "hire[d], discipline[d] and manage[d]" by both Managers and Assistant Managers (*id*., at Exh. 1-A, 1-B), Tellers are likely to have knowledge regarding the extent to which Managers and Assistant Managers engaged in these activities.

2.     **Mercantil's Employment Policies Require Managers and Assistant Managers to Ensure that Tellers and Other Branch Employees Do Not Engage in Off-The-Clock Work**

Mercantil maintains an Employee Handbook that contains various policies that govern its employees' conduct in the workplace. The Handbook states that "[t]he personnel policies set forth in this . . . Handbook are intended to serve as a working guide **for managers and supervisors in administering the personnel policies of the Company**." (Exh. 1-D) (emphasis

5

added).  Among other policies, Mercantil maintains an Overtime Policy which states that non-exempt employees will be paid overtime compensation at the rate of one-and-a-half times the regular rate of pay for work in excess of 40 hours per week. (*Id.*)  The policy also states that Mercantil "seeks to avoid unnecessary overtime through efficient arrangement of schedules and workloads." (*Id.*)

Mercantil also maintains a Discipline Policy, which directs Managers, Assistant Managers and other members of Mercantil's management to "clearly communicate any deficiencies and establish corrective action steps.  The staff member should . . . immediately improve the performance or behavior issue, or face further disciplinary action." (*Id.*)   The Discipline Policy then itemizes various prohibited actions, including, but not limited to, the following:

4.      Violation of any published rule, regulation or practice of the Company . . .

6.      Failure to use time sheet as required by regulation . . . [and]

7.      Falsification of records of time worked . . .

(*Id.*)  Pursuant to this policy, Mercantil prohibits its non-exempt branch employees from working off-the-clock, which would constitute both a failure to use their time sheets properly and also a falsification of their records of time worked.

Mercantil also maintains a Compensation policy, which states in relevant part as follows:

Non-exempt employees must punch in and out each day, and punch in and out for corresponding lunch time.  **Managers of non-exempt employees need to make necessary adjustments to time cards . . . by 5pm every Friday . . . Approving incorrect time cards or not approving a time card on the employee or manager's end can result in inaccurate pay or a delay in pay.**

(*Id.*) (emphasis added).  As such, Managers and Assistant Managers are personally responsible for ensuring the accuracy of the time cards submitted by Tellers.

6

**B.** **Plaintiff's Counsel Impermissibly Seeks to Represent Both Mercantil's Managers and Assistant Managers and Also Their Direct Reports, Tellers**

On October 17, 2014, Plaintiff's Counsel filed a Complaint in this Court on behalf of Claudia Betancourt, a former Assistant Manager for Mercantil, and a putative class of Mercantil's "assistant managers, managers, and/or similarly situated persons" ("the Betancourt Plaintiffs"),[1] thereby commencing Case No. 1:14-cv-23863-KMW. (A copy of the Betancourt Complaint is attached hereto as Exhibit 2) In the Betancourt Complaint, Plaintiff's Counsel claims that Mercantil "improperly classified [the Betancourt Plaintiffs] as overtime-exempt employees by paying them a regular salary without providing additional due and owing compensation for hours worked in excess of forty (40) per week." (Exh. 2, ¶ 21)

On October 20, 2014, only a few days after Plaintiff's Counsel filed the Betancourt Complaint, Plaintiff's Counsel filed a Complaint in this action on behalf of Plaintiff Aracellys Morales, a former Teller for Mercantil, and a purported class of the Betancourt Plaintiffs' direct reports, namely, "all tellers, personal bankers, and other similar non-exempt employees presently and formerly employed by [Mercantil] subject to [Mercantil's] unlawful pay practices and policies . . . ." ("the Morales Plaintiffs") (D.E. 1, ¶ 12). In the Morales Complaint, Plaintiff's Counsel asserts that Mercantil failed to pay the Morales Plaintiffs "for pre-shift and/or post-shift activities" (*Id*., at ¶ 16) and forced them "to perform off-the-clock security procedures and other work during overtime and/or non-overtime weeks." (*Id*., at ¶ 23)

**C.** **Plaintiff's Counsel Cannot Represent Both Morales and Betancourt, as Betancourt Hired, Supervised, Disciplined, and Modified Morales' Time Records, Thereby Giving Rise to an Impermissible Conflict**

The conflict discussed above is actual, not theoretical. As evidenced by the attached

---

[1] Mercantil will be filing a separate motion in the *Betancourt* case to address the impropriety of Plaintiff's Counsel's representation of both Managers and Assistant Managers, i.e., the Managers' direct reports, in the same class.

exhibits, and as explained in detail below, Betancourt was Morales' direct supervisor.  She interviewed Morales and participated in the decision to hire her.  Betancourt also supervised Morales' job performance and issued her written disciplinary action when appropriate. Betancourt was involved in scheduling Morales' work hours, as well as in ensuring Morales' time records accurately reflected the hours she worked.  When Morales' time records required adjustments (*e.g,* because she forgot to clock out or began work before clocking in), Betancourt made those adjustments to Morales' time records.  This is evident from Betancourt's name appearing on the records next to the adjustments.  Yet, Plaintiff's counsel seeks to represent both Morales and Betancourt, irrespective of the fact that Morales is pointing to Betancourt and other managers as the culprits who deprived her of compensation for hours worked.   This inherent conflict makes it patently inappropriate and impermissible for Plaintiff's counsel to represent both Morales and Betancourt.  Not only would doing so constitute a violation of the Rules Regulating the Florida Bar, but it also would be unfair to the Plaintiffs and, at a minimum, creates an appearance of impropriety.

## III.    LEGAL ARGUMENT

Plaintiff's Counsel's concurrent representation of the Betancourt Plaintiffs (*i.e.*, Mercantil's Managers and Assistant Managers), and the Morales Plaintiffs (*i.e*., Mercantil's Tellers, who are supervised by Mercantil's Managers and Assistant Managers), constitutes a conflict of interest that violates The Rules Regulating The Florida Bar ("The Florida Rules") and will prejudice both the Betancourt Plaintiffs and the Morales Plaintiffs, as well as Mercantil. Plaintiff's Counsel should be disqualified from representing the Morales Plaintiffs in this matter.

### A.    Legal Standard Applicable to Disqualification of Attorneys

This Court has the responsibility to regulate the conduct of the attorneys who practice

before it. *Florida Insurance Guaranty Association, Inc. v. Carey Canada, Inc.*, 749 F. Supp. 255 (S.D.Fla. 1990) (citing *United States v. Kitchin*, 592 F.2d 900, 903 (5th Cir. 1979)). As part of this responsibility, this Court has adopted The Florida Rules to determine when the disqualification of an attorney is warranted. L.R. 11.1(c). *See Florida Ins. Guar. Ass'n, Inc. v. Carey Canada*, 749 F. Supp. 255, 258, n.3 (S.D. Fla. 1990) (disqualifying attorney from representing plaintiff under Florida Rules due to impermissible conflict of interest).

Rule 4-1.7 of The Florida Rules governs potential conflicts of interest and states:

(a)     Except as provided in subdivision (b), a lawyer must not represent a client if . . .

    (2)     there is a substantial risk that the representation of 1 or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person . . .

(b)     Notwithstanding the existence of a conflict of interest under subdivision (a), a lawyer may represent a client if . . .

    (1)     the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

    (2)     the representation is not prohibited by law;

    (3)     the representation does not involve the assertion of a position adverse to another client when the lawyer represents both clients in the same proceeding before a tribunal; and

    (4)     each affected client gives informed consent, confirmed in writing or clearly stated on the record at a hearing.

R. Regulating Fla. Bar 4-1.7. The Comments to this Rule are instructive. According to the Comments, "[l]oyalty to a client is . . . impaired when a lawyer cannot consider, recommend, or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests." *Id.*, at Comment, "Loyalty to a client." With respect to an attorney's conflicts of interest in litigation, the Comments state further that "**a lawyer may not act as advocate against a client the lawyer represents in some other matter, even if the**

9

**other matter is wholly unrelated."** *Id*., at Comment, "Conflicts in litigation" (emphasis added).

This prohibition is not unique to Florida.  In fact, it is followed in other states for the obvious reasons that (1) when a client is represented by a lawyer who represents another client directly adverse to the first, the first is likely to feel betrayed which, in turn, may damage the client-lawyer relationship and the lawyer's ability to represent the client effectively; and (2) the client may fear that the lawyer will pursue his/her case less effectively to help the other adverse client. The logic behind this prohibition is explained in a Comment to an identical restriction contained in the Kentucky Rules of Professional Conduct:

> The client as to whom the representation is directly adverse is likely to feel betrayed, and the resulting damage to the client-lawyer relationship is likely to impair the lawyer's ability to represent the client effectively.  In addition, the client on whose behalf the adverse representation is undertaken reasonably may fear that the lawyer will pursue that client's case less effectively out of deference to the other client, i.e., that the representation may be materially limited by the lawyer's interest in retaining the current client.

Ky. Sup. R. 1.7, cmt. 6.  For these reasons, Plaintiff's counsel should not be permitted to represent the Plaintiffs in this action while simultaneously representing the plaintiffs in the Betancourt action.

**B.**     **The Court Should Disqualify Plaintiff's Counsel From Their Representation of Plaintiffs Due To The Irreconcilable and Unwaivable Conflict of Interest Between The Betancourt Plaintiffs And The Morales Plaintiffs**

In the instant case, there is a clear, irreconcilable and unwaivable conflict of interest between the Betancourt Plaintiffs (Mercantil's Managers and Assistant Managers) and the Morales Plaintiffs (Mercantil's non-exempt branch employees), as there is an inherent "substantial risk" that Plaintiff's Counsel's representation of the Morales Plaintiffs will be materially limited by their responsibilities to the Betancourt Plaintiffs.

1. **Plaintiff's Counsel Will Be Required To Assert Arguments On Behalf Of The Morales Plaintiffs That Are Adverse To His Other Clients, The Betancourt Plaintiffs**

First, Plaintiff's Counsel represents the Morales Plaintiffs, non-exempt branch employees who are purportedly victims of alleged violations by Mercantil's Managers and Assistant Managers (the Betancourt Plaintiffs) of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"). Concurrently, Plaintiff's Counsel also represents the Betancourt Plaintiffs, who would have been directly responsible for causing the alleged violations that purportedly resulted in harm to the Morales Plaintiffs. As such, Plaintiff's Counsel has placed himself in a position of irreconcilably divided loyalties: If the Morales Plaintiffs were in fact required to work off the clock, as they allege in their Complaint, the fault necessarily lies with their respective Managers and Assistant Managers, the Betancourt Plaintiffs, who would have been acting in direct contravention of Mercantil's policies. This conflict of interest, one which would materially limit the lawyer's responsibility to one set of clients or the other, is precisely the type of scenario that is envisioned – and prohibited – by Rule 4-1.7(a).

Indeed, courts around the country squarely prohibit this particular type of inherent conflict of interest, where an attorney represents both managers and their direct reports in the same or related matters. *See, e.g.*, *Davis v. Kraft Foods N. Am.*, 2006 U.S. Dist. LEXIS 3512 (E.D. Pa. Jan 31, 2006) (finding impermissible conflict of interest where counsel for employee seeking to serve as class representative also represented employer's former Employee Relations Manager in separate discrimination suit against employer); *Ellerd v. County of Los Angeles*, 2009 U.S. Dist. LEXIS 36865, *13-14 (C.D. Cal. Apr. 9, 2009) ("In order to prove their claims, the social workers will have to show that their supervisors violated federal law and defendant's official policies by telling the social workers not to record their overtime. Given this inherent conflict, the Court cannot conclude that plaintiffs' counsel can adequately represent both the

11

social workers and the supervisors."). *See also White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002) (finding "inherent conflict of interest" between foremen and crewmen who were plaintiffs in same FLSA action where foremen were responsible for keeping track of and accurately reporting crew members' payroll information because "foremen may be held individually responsible for the potential claims of crewmen"); *King v. Enterprise Rent-A-Car Co.*, 231 F.R.D. 255 (E.D. Mich. 2004) (finding inherent conflict among class members in a race discrimination case who acted in a supervisory capacity over other class members because the supervisory class members could be called upon "to refute allegations of other members and testify that certain actions, such as negative evaluations or decisions not to promote, were for legitimate business reasons").

The exact scenario at issue in this case was addressed by the Court in *McCauley v. Family Dollar, Inc.*, 2010 U.S. Dist. LEXIS 116636 (W.D. Ky. Nov. 1, 2010). In *McCauley*, the plaintiffs' counsel represented a group of hourly employees who claimed that Family Dollar forced them to work off the clock. *Id*., at * 2. However, the same attorneys also simultaneously represented two former store managers for Family Dollar in a separate matter, who claimed that the company had misclassified them as exempt from the overtime requirements of the FLSA. *Id*. Family Dollar moved to disqualify the plaintiffs' counsel on the grounds that "[b]ecause the store managers are employees' direct supervisors and are responsible for . . . preventing off-clock work violations in the store, they would necessarily bear some responsibility for the violations the employee plaintiffs allege." *Id*., at *3. Citing Kentucky law, which is identical in all relevant respects to the Florida law that governs this case, the Court agreed and found that managers and hourly employees are "directly adverse" under such circumstances:

> [T]he store managers . . . have interests that conflict with those of the employees .
> . . . The [hourly employees] allege that Family Dollar illegally denied them

breaks and forced them to work while off the clock. Under Family Dollar's organizational structure, store managers supervise the day-to-day operations of the store, including monitoring employees' breaks and ensuring that off the clock work does not occur. It follows that the store managers, as the parties who manage employees' breaks and hours on a day-to-day basis, would have played at least some role in the wage and hour violations the [hourly employees] allege.

This situation presents a number of potential practical ethical problems. For instance, Family Dollar asserts that as part of its defense [against the hourly employees' claims], it anticipates calling as witnesses store managers who will testify that they did not violate wage and hour laws. At that point, plaintiffs' counsel will be forced to either cross-examine the manager who is on the stand to protect [the hourly employees'] interests or refrain from cross-examination in order to avoid prejudicing the managerial plaintiffs . . . thus undermining plaintiffs' counsel's ability to zealously advocate on behalf of his clients.

Family Dollar also points out that the dual representation creates the possibility of collusion between the two groups. The store managers, as probable players in Family Dollar's defense [against the hourly employees], will likely be exposed to privileged Family Dollar information in the course of working with Family Dollar's attorneys. It would be difficult, if not impossible, to ensure that this information would not be communicated to the managers' attorney when meeting with him about about the [managers'] case. The dual representation would also present the temptation for the managers and employees to trade favorable testimony or share information among themselves in a manner that would unfairly prejudice Family Dollar's case.

Family Dollar does not allege, nor do we suggest, that such collusion has or will occur. However, "[t]he point is not whether impropriety exists, but that any appearance of impropriety is to be avoided." The mere potential for collusion between two groups of plaintiffs prosecuting cases against a single defendant creates a substantial appearance of impropriety. That no untoward action has actually taken place is immaterial.

*Id.*, at *5-7 (citations omitted). Rejecting the plaintiffs' counsel's argument that the two groups' interests were aligned because they both sought relief from the same party, the Court found the opposite to be true: "[t]he fact that the parties are united against a common foe actually heightens the possibility of improper collusion and bolsters the case for disqualifying plaintiffs' counsel in this matter." *Id.*, at *8.

In this case, Plaintiffs' Counsel's representation of both the Betancourt Plaintiffs and the Morales Plaintiffs would result in the same ethical problems that were prohibited in *McCauley*.

Specifically, Plaintiff's Counsel cannot objectively and effectively represent Mercantil's Managers and Assistant Managers (the Betancourt Plaintiffs) in their claims against Mercantil while at the same time arguing in this case that the same Managers and Assistant Managers were part of an unlawful scheme to deprive Mercantil's non-exempt branch employees (the Morales Plaintiffs) of their wages.  Moreover, because Mercantil's Managers and Assistant Managers have direct supervisory authority over the Morales Plaintiffs and are responsible for ensuring compliance with relevant wage and hour laws, Plaintiff's Counsel may be required to argue on behalf of the Morales Plaintiffs that Mercantil's Managers and Assistant Managers are "employers" under the FLSA[2] and therefore are subject to individual liability for Mercantil's alleged violations of the law.  Thus, it is impossible for Plaintiff's Counsel to exercise independent professional judgment on behalf of the Morales Plaintiffs in considering whether to take action against Mercantil's Managers and Assistant Managers individually because Plaintiff's Counsel also represents those same individuals.

Far from being speculative, Plaintiff's Counsel's conflict of interest has already come to bear.  In particular, on November 25, 2014, Plaintiff's Counsel filed a "Motion for Declaration of a Class Action and Supporting Memorandum of Law" on behalf of Plaintiff ("Motion for Declaration"). (D.E. 11)  In the Motion for Declaration, Plaintiff's Counsel asserted that the requisite "common questions of law and fact" necessary to certify Plaintiff's case as a class action include "whether Mercantil, **through its managers or other agents**, has engaged in a company-wide policy of requiring uncompensated work; whether Mercantil **and its agents** acted with reckless disregard for the FLSA." (*Id.*, at pp. 6, 8) (emphasis added).  As such, Plaintiff's Counsel has expressly asserted on the record that Mercantil's Managers and Assistant Managers

---

[2] The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

14

– in other words, the Betancourt Plaintiffs, *Plaintiff's Counsel's own clients* – may be directly to blame for Mercantil's alleged violation of the law; at a minimum, pursuant to Plaintiff's Counsel assertions, Mercantil's Managers and Assistant Managers will likely be key witnesses both in his prosecution of Plaintiff's claims and, by extension, in Mercantil's defense of such claims. However, because these individuals are also currently Plaintiff's Counsel's clients, Mercantil cannot talk to them in confidence in order to investigate and respond to Plaintiff's Motion for Declaration. Therefore, Mercantil has already been materially prejudiced by Plaintiff's Counsel's conflict of interest, and such prejudice will only continue if Plaintiff's Counsel is not disqualified from representing Plaintiff in this matter.

Even if the Morales Plaintiffs did not seek to hold the Betancourt Plaintiffs individually liable, the Morales Plaintiffs are claiming in their Complaint that Mercantil is bound and responsible for the acts and/or omissions of the Betancourt Plaintiffs. (*See, e.g*., D.E. 1, ¶ 23) (alleging that the Morales Plaintiffs were "forced to perform off-the-clock security procedures" as part of their work at Mercantil's branches). Plaintiff's Counsel cannot prosecute that claim and also diligently represent the Betancourt Plaintiffs. *See* R. Regulating Fla. Bar 4-1.7, Comment, "Conflicts in litigation" (stating that "a lawyer may not act as advocate against a client the lawyer represents in some other matter, even if the other matter is wholly unrelated.").

At a minimum, Plaintiff's Counsel's duty to the Morales Plaintiffs require them to at least consider the possibility of arguing both that the conduct of the Betancourt Plaintiffs binds Mercantil and that those individuals violated not only the policies of Mercantil but also federal and state laws regarding off-the-clock work. At the same time, Plaintiffs' Counsel's duty to the Betancourt Plaintiffs would require them to deny those same claims or deflect responsibility back to the Morales Plaintiffs. As the United States Supreme Court has held,

> Middle-level - and indeed lower-level - employees can, by actions within the scope of their employment, embroil the corporation in serious legal difficulties, and it is only natural that these employees would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties.

*Upjohn Co. v. United States*, 449 U.S. 383, 391 (1981).

In addition to Plaintiff's Counsel's existing conflict of interest as a result of the arguments he asserted in the Motion for Declaration, all of the foregoing scenarios showing why Plaintiffs' Counsel should be disqualified have been made actual and very real because the named plaintiff in the *Betancourt* case, Claudia Betancourt, was Plaintiff's direct supervisor. Thus, as part of Plaintiff's "New Employee Checklist" in April 2012, it was Betancourt who explained Plaintiff's regular work hours and Mercantil's timekeeping system to her. (*See* Exh. 1-E)  Later on in Plaintiff's employment with Mercantil, Betancourt was responsible for reviewing and correcting Plaintiff's timesheets as necessary, and Betancourt actually performed these tasks. (*See* Exh. 1-F)  These facts alone show that Betancourt will likely be a key witness for Mercantil to establish Plaintiff's knowledge of the proper method to keep track of her hours worked and that Plaintiff's timesheets were accurate.  Lastly, Betancourt was responsible for ensuring that Plaintiff complied with Mercantil's policies and procedures, as evidenced by Betancourt's issuance of a Written Warning to Morales on February 7, 2014 for violating one of the Bank's policies regarding customers' signatures for withdrawals. (*See* Exh. 1-G).  In fact, Betancourt admonished Plaintiff, "[Plaintiff] needs to properly follow bank policies and procedures and show immediate improvement.  Any future incident can result in further disciplinary action, up to and including termination." (*Id.*)  Given the actual responsibility that Betancourt had for Plaintiff's compliance with Mercantil's policies and procedures, as well as the fact that Betancourt personally trained Morales in how to use Mercantil's timekeeping system, the ethical

issues described above will inevitably arise in this case if Plaintiff's Counsel is not disqualified from representing Plaintiff in this matter.    Because Plaintiff's Counsel's concurrent representation of both the Betancourt Plaintiffs and the Morales Plaintiffs would require them to argue that, in either case, their own clients are responsible for violations of the law, Plaintiff's Counsel should be disqualified from representing the Morales Plaintiffs.

### 3.   Plaintiff's Counsel Cannot Cure The Conflict of Interest Because They Cannot Obtain Waivers On Behalf Of The Absent Class Members That Plaintiff's Counsel Purports To Represent

Not only is Plaintiff's Counsel's conflict of interest between the Betancourt Plaintiffs and the Morales Plaintiffs irreconcilable, but Plaintiffs' Counsel cannot obtain the requisite "informed consent" from "each affected client," as required by Rule 4-1.7(b)(4) so as to cure such conflict.

Rule 7.1(b)(4) provides that an attorney can represent clients with conflicting interests if he or she obtains a written waiver.   However, courts have rejected attempts by attorneys to circumvent this requirement on behalf of absent class members. As the *McCauley* court noted,

> informed consent requires that each affected client be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interests of that client.  The use of the word "each" in this rule renders it unlikely that a named plaintiff could waive a conflict on behalf of the entire class because the rule demands individualized consent . . . [A] conflict of interest exists in plaintiffs' counsel's concurrent representation of both the managerial and employee plaintiffs.   Because the Kentucky rules require the consent of each affected client, the named plaintiffs in this putative class action may not waive the conflict on behalf of the unnamed class members. Plaintiffs' counsel may not represent both groups of plaintiffs.

*McCauley*, 2010 U.S. Dist. LEXIS 116636, at *9 (quotations and citations omitted) (discussing analogous Kentucky rule).  *See also In re Terazosin Hydrochloride Antitrust Litig.*, 223 F.R.D. 666, 677 (S.D. Fla. 2004) (expressing doubt as to whether "representative class members can waive any actual or potential conflicts for the remaining . . . members of the defined proposed

class."); *Davis*, 2006 U.S. Dist. LEXIS 3512, at \*36-37 (explaining that "consent after full disclosure is impossible in class actions," and therefore a putative class representative may not waive a conflict of interest on behalf of the unnamed class); *Palumbo v. Tele-Communications, Inc.*, 157 F.R.D. 129, 132-33 (D.D.C. 1994) ("Unidentified class members cannot waive a potential conflict of interest."); *Molina v. The Mallah Organization, Inc.*, 804 F.Supp. 504, 513 (S.D.N.Y. 1992) (finding counsel cannot obtain a waiver on behalf of absent class members).

Above and beyond the impossibility of obtaining informed consents from absent class members, it is highly unlikely that class members would waive such conflict after being advised of the risks such waiver presents to their ability to prevail in this litigation, as Mercantil's current Managers, Assistant Managers and Tellers would each be waiving a conflict that could put their continued employment at risk if Plaintiffs' Counsel discovered evidence that any of them violated Mercantil's policies regarding "violations of, or noncomformance with, laws, rules, regulations, prescribed practices, internal policies and procedures or ethical standards." (Exh. 1-A, 1-B, 1-C).   Thus, Plaintiff's Counsel cannot obtain the waivers contemplated by Rule 1.7(b).

4. **Plaintiff's Counsel Cannot Cure The Conflict of Interest By Ceasing to Represent The Betancourt Plaintiffs**

Finally, Plaintiff's Counsel may argue that they can continue to represent the Morales Plaintiffs if they simply withdraw as counsel for the Betancourt Plaintiffs.  However, this is not a viable option, as it would violate the "hot potato" rule, under which an attorney "may not drop one client like a hot potato in order to avoid a conflict with another, more remunerative client." *Davis*, 2006 U.S. Dist. LEXIS 3512, at \*38 (holding that attorney who purported to represent a class of employees in race discrimination claim could not cure conflict by withdrawing from another case). *See also Santacroce v. Neff, 134 F. Supp. 2d 366, 370-71 (D.N.J. 2001* (applying "hot potato" rule to preclude a law firm from dropping one client to avoid conflict with another

client).  Rather than being given a "choice" of clients from which to choose, Plaintiffs' Counsel should be disqualified from representing the Morales Plaintiffs in this case, as Plaintiff's Counsel filed the Complaint on behalf of the Betancourt Plaintiffs first and, therefore, the conflict arose upon Plaintiff's Counsel's filing of the Complaint on behalf of the Morales Plaintiffs.

### C.   Mercantil Is And Will Continue To Be Materially Prejudiced By Plaintiff's Counsel's Conflict Of Interest

Finally – and equally important – Mercantil is and will continue to be materially prejudiced by Plaintiff's Counsel's foregoing conflict of interest.  Plaintiff's Counsel is seeking to hold Mercantil liable to its non-exempt branch employees for damages, liquidated damages, costs, and attorneys' fees based upon Mercantil's Managers' and Assistant Managers' alleged conduct.  In connection with its defense, Mercantil anticipates the absolute need to have privileged communications with its current and former Managers and Assistant Managers in this lawsuit in their capacity as management personnel with responsibility for the lawful operation of its branches, the enforcement of the relevant policies, and the supervision of the Morales Plaintiffs.  The confidentiality of information exchanged during these communications will be compromised if the Managers and Assistant Managers also have a confidential attorney-client relationship with Plaintiff's Counsel, who represents them as the Betancourt Plaintiffs.  This breach of Mercantil's confidentiality is particularly likely if the Managers and/or Assistant Managers believe that information learned in connection with this litigation will advance their position in the *Betancourt* case.

Similarly, Mercantil also expects to offer testimony of Managers and Assistant Managers who deny that they violated either Mercantil's policies or the law.  However, these individuals will be vulnerable to agreeing with Plaintiff's Counsel's theories propounded on behalf of the Morales Plaintiffs on cross-examination because they will not perceive Plaintiff's Counsel as

their adversary since he is, after all, their lawyer in the *Betancourt* case. *See, e.g., United States of America v. Hreljac*, 2007 U.S. Dist. LEXIS 520 (E.D. Ky. Jan 5, 2007) (granting motion to disqualify counsel in a criminal case because possibility that attorney could cross-examine former client was sufficient to create potential appearance of a conflict of interest).

Mercantil is also prejudiced by the potential for improper collusion among Plaintiff's Counsel and the two sets of Plaintiffs. For example, former Managers and Assistant Managers who are assured by Plaintiff's Counsel that the Morales Plaintiffs will not seek to hold them individually liable and who will not risk termination for their conduct because they are no longer employed by Mercantil, may be motivated to capitalize on their potential ability to bind Mercantil in this case. In such a circumstance, those individuals would be motivated to admit that they forced Mercantil's non-exempt employees to work off-the-clock in exchange for testimony from non-exempt branch employees in the *Betancourt* case that the Managers and Assistant Managers performed only non-managerial duties and therefore were misclassified as exempt. By such collusion, which would be aided by Plaintiff's Counsel's improper representation of both groups of individuals, Plaintiff's Counsel and both sets of his clients would unfairly win, and Mercantil would be required to pay hefty damages and attorneys' fees. The mere possibility of this type of collusion undermines the integrity of both the legal profession and the legal system and should not be allowed. *See McCauley*, 2010 U.S. Dist. LEXIS 116636, at *7 ("The mere potential for collusion between two groups of plaintiffs prosecuting cases against a single defendant creates a substantial appearance of impropriety. That no untoward action has actually taken place is immaterial.").

As such, Mercantil will be injured by Plaintiff's Counsel's concurrent representation of Mercantil's non-exempt branch employees in this case and its Managers and Assistant Managers,

who are responsible for enforcing the very policies and laws that the Morales Plaintiffs contend Mercantil violated, in the *Betancourt* case. If Plaintiff's Counsel is permitted to continue to represent both the Betancourt Plaintiffs and the Morales Plaintiffs, Mercantil will continue to suffer material prejudice in its defense of both cases, thereby providing yet another reason for the Court to disqualify Plaintiff's Counsel.

## IV.    Conclusion

For the reasons set forth herein, the Court should disqualify Plaintiff's Counsel, Anthony M. Georges-Pierre, Esq. and his firm, Remer & Georges-Pierre, PLLC, from representing Plaintiffs in this action, in addition to granting such other and further relief as the Court deems appropriate under the circumstances.

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to S.D. Fla. L.R. 7.1(a)(3), the undersigned counsel certifies she has conferred with counsel for Plaintiff, Anthony Georges-Pierre, by e-mail on December 23 and 24, 2014 in a good faith effort to resolve by agreement the issues raised in this Motion. Mr. Georges-Pierre advised that he and Plaintiff opposes the relief sought herein.

Dated: December 29, 2014          Respectfully submitted,
       Miami, Florida

By: s/ Jennifer A. Schwartz
David E. Block, Esq.
Fla. Bar No. 0108820
E-mail: *david.block@jacksonlewis.com*
Jennifer A. Schwartz, Esq.
Fla. Bar No. 502431
E-mail: *jennifer.schwartz@jacksonlewis.com*
JACKSON LEWIS P.C.
One Biscayne Tower
2 South Biscayne Boulevard, Suite 3500
Miami, FL 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466
*Counsel for Defendant*

CASE NO.:14-23881-CIV-MOORE/MCALILEY

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of December 2014, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

s/ Jennifer A. Schwartz
Jennifer A. Schwartz, Esq.

22

CASE NO.:14-23881-CIV-MOORE/MCALILEY

## SERVICE LIST

**MORALES, ET AL. V. MERCANTIL COMMERCEBANK FLORIDA BANCORP INC.
CASE NO.: 14-23881-CIV- MOORE/MCALILEY**

Anthony M. Georges-Pierre, Esq. (533637)
Email:*agp@rgpattorneys.com*
REMER & GEORGES-PIERRE, PLLC
44 West Flagler Street
Suite 2200
Miami, Florida 33130
Telephone: (305) 416-5000
Facsimile:  (305) 416-5005

David E. Block, Esq. (0108820)
Email: *david.block@jacksonlewis.com*
Jennifer A. Schwartz, Esq. (502431)
Email: *jennifer.schwartz@jacksonlewis.com*
Allison M. Gluvna, Esq. (041075)
Email: *allison.gluvna@jacksonlewis.com*
JACKSON LEWIS P.C.
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466

*Counsel for Plaintiff*
Served via transmission of Notices of
Electronic Filing generated by CM/ECF

*Counsel for Defendant*
Served via transmission of Notices of
Electronic Filing generated by CM/ECF

23