UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:14-23881-CIV-MOORE/MCALILEY

ARACELLYS MORALES,
and other similarly situated individuals,

        Plaintiffs,

v.

MERCANTIL COMMERCEBANK FLORIDA
BANCORP INC., and JOHN DOES 1-10,

        Defendants.

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO
DISQUALIFY PLAINTIFF'S COUNSEL**

Defendant, Mercantil Commercebank Florida Bancorp Inc. ("Mercantile" or "Defendant"), by and through its undersigned counsel, submits this Reply in Support of its Motion to Disqualify Plaintiff's Counsel [D.E. 21], and states as follows:

**PRELIMINARY STATEMENT**

Defendant filed its Motion to Disqualify Plaintiff's Counsel (the "Motion") because an irreconcilable and unwaivable conflict of interest exists between their representation of Defendant's non-exempt branch employees in this case (the *Morales* Plaintiffs) and Defendant's branch managers in another action (the *Betancourt* Plaintiffs). Specifically, the *Morales* Plaintiffs claim they worked off the clock at the behest of or with the full knowledge of the *Betancourt* Plaintiffs. As established in Defendant's moving papers, Plaintiff's counsel's representation of both the victims and the perpetrators of the alleged violations of law creates an unethical and unlawful conflict of interest, which materially prejudices Mercantil in a number of ways.

In Plaintiff's Response in Opposition to the Motion (the "Response"), Plaintiff concedes that the dual representation creates an appearance of impropriety and ignores

CASE NO.: 14-23881-CIV-MOORE/MCALILEY

Defendant's case law which demonstrates why disqualification is appropriate and necessary under the circumstances.  Plaintiff's entire opposition seemingly is predicated on her denial (without citation to the record) of the actual conflict that does exist and her proffer of an alternative fact pattern which *may* develop in discovery which *may* resolve or avoid the conflict. Defendant disagrees.  The facts as plead and as they exist at this stage show a clear conflict between the Plaintiffs in both cases.  Even under Plaintiff's own argument (*i.e.,* that discovery should proceed first) disqualification is appropriate.  The potential exists now for a conflict.  If the case proceeds, and the conflict continues, the Court cannot then "unscramble" the proverbial egg.

For the reasons discussed below and in the Motion, Plaintiff's counsel, Anthony m. Georges-Pierre, Esq. and his firm, Remer & Georges-Pierre, PLLC (collectively "Plaintiff's Counsel") should be disqualified from representing Plaintiff and/or any class members in this matter.

## ARGUMENT

### I.      Defendant Has Established That The Conflict is Actual, Not Speculative

In her Response, Plaintiff argues that the conflict at issue is speculative and hypothetical, mostly because discovery has not taken place.  The record belies this claim. Plaintiff already has pointed to the *Betancourt* Plaintiffs as the perpetrators of the alleged FLSA violations, Defendant already has been prejudiced by the dual representation, and there are clear, undeniable issues in the case arising from the conflict.[1]

---

[1] In her Response, Plaintiff does not disagree that Plaintiff's Counsel's representation of both the *Betancourt* and *Morales* Plaintiffs creates an appearance of impropriety.  Instead, she claims that the appearance of impropriety is not enough for the Court to disqualify them from representing the *Morales* Plaintiffs.  [D.E. 27, p. 6]  It is clear, however, that much more than the mere "appearance" of impropriety exists in this case.  Plaintiffs' Counsel's representation of both groups of Plaintiffs actually is improper and presents numerous ethical issues, all of which are addressed in detail in Defendant's Motion, and touched on herein.  [D.E. 21]

2

CASE NO.: 14-23881-CIV-MOORE/MCALILEY

A.      **The Morales Plaintiffs point to the Betancourt Plaintiffs as the perpetrators of the alleged FLSA violations in their Motion for Declaration of Class Action**

Plaintiff argues that the conflict at issue is "entirely speculative" because, *inter alia*, the *Morales* Plaintiffs may choose not to proffer certain legal theories and arguments against the *Betancourt* Plaintiffs.  [D.E. 27, P.4]  This is precisely the reason that Plaintiff's Counsel cannot effectively represent both groups.  Plaintiff's Counsel is limited in their ability to litigate the *Morales* and *Betancourt* Plaintiffs' claims because they are, in all relevant respects, directly adverse to each other.  *See, e.g.,* Plaintiff's Motion for Declaration, in which the *Morales* Plaintiffs allege that one of the common questions of law and fact necessary to certify their case as a class action is "whether Mercantil, **through its managers or other agents**, has engaged in a company-wide policy of requiring uncompensated work. . ." [D.E. 11, pp. 6, 8] (emphasis added).  Thus, Plaintiff's Counsel expressly asserted on the record that the *Betancourt* Plaintiffs are to blame for Mercantil's alleged violations of the FLSA.   Plaintiff's Counsel's duty to the *Morales* Plaintiffs requires them to consider the possibility of arguing both that the conduct of the *Betancourt* Plaintiffs binds Mercantil and that those individuals violated not only the policies of Mercantil but also federal and state wage and hour laws.  At the same time, Plaintiffs' counsel's duty to the *Betancourt* Plaintiffs would require them to deny those same claims or deflect responsibility back to the *Morales* Plaintiffs.

It is impossible for Plaintiff's Counsel to exercise independent professional judgment on behalf of both groups, given the obvious – not speculative - conflict.

B.      **Plaintiff does not dispute that Betancourt was her direct supervisor and, therefore, an actual conflict of interest exists between the two named Plaintiffs**

Plaintiff's Response ignores the evidence submitted by Defendant demonstrating that an actual conflict exists.  The named Plaintiff in the *Betancourt* case, Claudia Betancourt,

was the direct supervisor of the named Plaintiff in the instant case, Aracellys Morales.  <u>Plaintiff does not deny this fact in her Response</u>.  Defendant has proffered evidence demonstrating that Claudia Betancourt (1) interviewed Aracellys Morales and participated in the decision to hire her; (2) supervised Morales' job performance and issued her written disciplinary action when appropriate; (3) ensured Morales' time records accurately reflected the hours she worked; (4) trained Morales on Mercantil's time keeping procedures and policies; and (5)  adjusted Morales' time entries when changes were  required (*e.g.,* because Morales forgot to clock out or began work before clocking in).  [D.E. 29; Exh. 1 thereto]  Plaintiff does not refute these facts in her Response because, Defendant submits, she knows them to be true.

Because Plaintiff's Counsel's concurrent representation of both the *Betancourt* Plaintiffs and *Morales* Plaintiffs would require them to argue that, in either case, their own clients are responsible for violations of the law, Plaintiff's Counsel should be disqualified from representing the *Morales* Plaintiffs.

## C.     <u>Plaintiff does not dispute, nor can she dispute, the Betancourt Plaintiffs had to play some role in the alleged FLSA violations</u>

Although not named as parties in the *Morales* action, the Managers and Assistant Managers who make up the proposed plaintiff class in *Betancourt* clearly have interests that conflict with those of the employees in *Morales*.  The *Morales* Plaintiffs allege that Mercantil illegally failed to pay them for work they performed while off the clock.  Under Mercantil's organizational structure, Managers and Assistant Managers supervise the day-to-day operations of the branches, including monitoring employees' work hours and ensuring that off the clock work does not occur.  *See* Declaration of Jaclyn Luis at D.E. 21; Exh. 1 thereto.  It follows that Managers and Assistant Managers as the parties who manage employees' work hours on a day-to-day basis would have played at least some role in the wage and hour violations the *Morales* Plaintiffs allege, thereby giving rise to a conflict of interest between the two groups.

**D.      Plaintiff's Counsel will have to cross-examine his own clients**

In addition to the foregoing problems caused by the dual representation, Plaintiff's Counsel will be placed in a position of cross-examining his own clients should he be permitted to represent both groups of Plaintiffs. As part of its defense in the *Morales* case, Mercantil will have to call as witnesses the *Betancourt* Plaintiffs – the Managers and Assistant Managers who will testify that they did not violate wage and hour laws. At that point, Plaintiff's Counsel will be forced to either cross-examine the manager who is on the stand to protect the *Morales* Plaintiffs' interests or refrain from cross-examination in order to avoid prejudicing the managerial plaintiffs in the *Betancourt* action, thereby undermining the Plaintiffs' Counsel's ability to zealously advocate on behalf of his clients.[2]

**E.      There is a very real potential for collusion among the Plaintiffs**

Plaintiff concludes, without explanation or supporting case authority, that Defendant's concern over the potential for collusion among the *Morales* and *Betancourt* Plaintiffs is "unfounded" and "inadequate" to support disqualification. Plaintiff fails to understand that the basis for disqualification is not so much the potential for collusion but the prejudice that will result by the potential for collusion among Plaintiff's Counsel and the two sets of Plaintiffs, in addition to all of the other reasons explaining why disqualification is necessary in this case. As explained in detail in the Motion, the former Managers and Assistant Managers

---

[2] The two cases relied upon by Plaintiff in her Response on this point, both of which affirmed disqualification of counsel, are inapposite. In *Herrmann v. GutterGuard, Inc*., 199 Fed. Appx. 745 (11th Cir. 2006), the employees' attorney in an FLSA overtime suit was disqualified because his prior firm had conducted an employment law audit of the employer corporation, and the attorney likely learned information critical to determining whether the employer violated the FLSA. These facts are inapplicable here. Plaintiff also relies on the case of *Bedoya v. Aventura Limousine & Transp. Svc., Inc.*, 2012 U.S. Dist. LEXIS 59862; Case No. 11-24434-CIV-ALTONAGA (S.D. Fla. April 30, 2012), where this Court disqualified defense counsel because of conflicts that arose out of his previous representations of some of the plaintiffs. Once again, the facts are inapplicable to those in the instant case.

CASE NO.: 14-23881-CIV-MOORE/MCALILEY

who are assured by Plaintiff's Counsel that the *Morales* Plaintiffs will not seek to hold them individually liable, and who will not risk termination for their conduct because they are no longer employed by Mercantil, may be motivated to capitalize on their potential ability to bind Mercantil in this case.  In such a circumstance, those individuals would be motivated to admit that they forced Mercantil's non-exempt employees to work off-the-clock in exchange for testimony from non-exempt branch employees in the *Betancourt* case that the Managers and Assistant Managers performed only non-managerial duties and therefore were misclassified as exempt.  By such collusion, which would be aided by Plaintiff's Counsel's improper representation of both groups of individuals, Plaintiff's Counsel and both sets of his clients would unfairly win, and Mercantil would be required to pay hefty damages and attorneys' fees. The mere possibility of this type of collusion undermines the integrity of both the legal profession and the legal system and should not be allowed. *See, e.g., McCauley*, 2010 U.S. Dist. LEXIS 116636, at *7 ("The mere potential for collusion between two groups of plaintiffs prosecuting cases against a single defendant creates a substantial appearance of impropriety. That no untoward action has actually taken place is immaterial.").

As such, Mercantil will be injured by Plaintiff's Counsel's concurrent representation of Mercantil's non-exempt branch employees in this case and its Managers and Assistant Managers, who are responsible for enforcing the very policies and laws that the Morales Plaintiffs contend Mercantil violated, in the *Betancourt* case.  If Plaintiff's Counsel is permitted to continue to represent both the *Betancourt* Plaintiffs and the *Morales* Plaintiffs, Mercantil will continue to suffer material prejudice in its defense of both cases, thereby providing yet another reason for the Court to disqualify Plaintiff's Counsel.

6

CASE NO.: 14-23881-CIV-MOORE/MCALILEY

**II.      Defendant has established that Plaintiff's Counsel's representation of the Morales and Betancourt Plaintiffs violates a specific rule of professional conduct – Florida Bar Rule 4-1.7**

Plaintiff implies throughout her Response that disqualification is inappropriate because the Court will be unable to identify a specific Rule of Professional Conduct applicable to this matter or to conclude that Plaintiff's counsel violated such a rule.  [D.E. 27, p.4, 9].  In its Motion, Defendant established that Plaintiff's counsel's dual representation of both the *Morales* Plaintiffs and *Betancourt* Plaintiffs constitutes a clear violation of Florida Bar Rule 4-1.7. Plaintiff fails to proffer any evidence, case authority, or logical argument that demonstrates otherwise, aside from simply arguing that the conflict is "speculative." Given the foregoing undisputed facts, there can be no question that Plaintiff's Counsel's representation of both the *Morales* Plaintiffs and the *Betancourt* Plaintiffs constitutes a clear violation of Florida Bar Rule 4-1.7.

When interpreting the Rules governing the Florida Bar, the Florida Supreme Court has made it clear that:

> [a]n attorney may not represent conflicting interests in the same general transaction, no matter how well-meaning or *however slight* such adverse interest may be.  *The rule in this respect is rigid*, because it is designed not only to prevent the dishonest practitioner from fraudulent conduct but also to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to an attempt to reconcile conflicting interests, rather than to enforce to their full extent the rights of the interest which he should alone represent.

*See Fries v. The Teaford Co., Inc.*, 2012 U.S. Dist. LEXIS 128748; Case No. 5:12-cv-37-RS-CJK (N.D. Fla. Sept. 11, 2012) (emphasis in original) (citing *The Florida Bar v. Moore*, 194 So. 2d 264, 269 (Fla. 1966)).  Plaintiff's Counsel should be disqualified from this matter because the conflict at issue is not only "slight," the *Morales* and *Betancourt* Plaintiffs are directly adverse to each other. *See, e.g., McCauley v. Family Dollar, Inc.*, 2010 U.S. Dist. LEXIS 116636 (W.D.

7

Ky. Nov. 1, 2010) (disqualifying counsel from representing both managers and hourly employees in an FLSA action finding them to be "directly adverse" to each other).  [D.E. 21, pp.11-15]  Plaintiff's counsel has placed himself in a position of irreconcilably divided loyalties and, consequently, he should be disqualified.

### III.    Defendant Has Demonstrated That it Will Be Prejudiced Should Plaintiff's Counsel Be Permitted to Represent Both the Betancourt and Morales Plaintiffs

Despite having demonstrated in its moving papers how Defendant will be prejudiced by Plaintiff's Counsel's dual representation of the *Morales* and *Betancourt* Plaintiffs, Plaintiff argues that disqualification is inappropriate because Defendant's prejudice argument is based solely on "speculation" and "conjecture."[3]  A review of Defendant's Motion makes it readily apparent that the prejudice is real, not speculative, and is currently impacting Mercantil's ability to defend itself in both actions.  In addition to the prejudice Mercantil will suffer because of the potential for collusion, Defendant already has been prejudiced because it is unable to speak freely and confidentially with the Managers and Assistant Managers who the *Morales* Plaintiffs claim violated the FLSA.  The confidentiality of information exchanged during these communications will be compromised if the Managers and Assistant Managers also have a confidential attorney-client relationship with Plaintiff's Counsel, who represents them as the *Betancourt* Plaintiffs.  This breach of Mercantil's confidentiality is particularly likely if the Managers and/or Assistant Managers believe that information learned in connection with this litigation will advance their position in the *Betancourt* case.

Additionally, Mercantil expects to offer testimony of Managers and Assistant Managers who deny that they violated either Mercantil's policies or the law.  These individuals will be vulnerable to agreeing with Plaintiff's Counsel's theories propounded on behalf of the *Morales*

---

[3] Notably, actual proof of prejudice is not a pre-requisite to disqualification.  *See, e.g., State Farm Mutual Automobile Ins. Co., et al. v. K.A.W., et al.,* 575 So. 2d 630, 634 (Fla. 1991).

CASE NO.: 14-23881-CIV-MOORE/MCALILEY

Plaintiffs on cross-examination because they will not perceive Plaintiff's Counsel as their adversary since he is, after all, their lawyer in the *Betancourt* case.

**IV.     The Written Waivers Obtained by Plaintiff's Counsel are Deficient and Fail to Cure the Conflict As Plaintiff's Counsel Cannot Obtain Waivers on behalf of the Absent Class Members That He Seeks to Represent**

In an effort to avoid disqualification, Plaintiff's Counsel obtained written waivers from the two *Morales* Plaintiffs and one *Betancourt* Plaintiff.  [D.E. 27; Exh. A]  These waivers fail to cure the conflict at issue for two reasons: (1) the waivers are deficient - they are wrought with confusing legalese and fail to make any attempt to explain the conflict between Plaintiff's Counsel's representation of both the non-exempt employees and the managers who they accuse of violating the FLSA; Plaintiffs cannot know or understand what they are waiving; and (2) Plaintiff's Counsel has not and, indeed, cannot obtain waivers from the absent class members. As explained in Defendant's moving papers, courts routinely reject attempts by attorneys to circumvent the informed consent requirement on behalf of absent class members.[4]  **Plaintiff agrees with Defendant on this point**.  [D.E. 27, P. 7]

In order to overcome this hurdle, Plaintiff argues that because "the Court has not yet ruled on Plaintiff's Motion for Class Certification, no attorney-client relationship exists with the proposed class members that would warrant disqualification."  [D.E. 27, P.7]  This argument defies logic because, as Plaintiff points out, she has filed a Motion for Class Certification.  If that Motion is granted, as she hopes it will be, then the conflict will exist with regard to the class members, and Plaintiff's Counsel never will be able to obtain informed consents from them. "[B]ecause consent after full disclosure is impossible in class actions, the district court must

---

[4] *See, e.g., McCauley*, 2010 U.S. Dist. LEXIS 116636, *9; *Terazosin Hydrochloride Antitrust Litig.*, 223 F.R.D. 666, 677 (S.D. Fla. 2004); *Davis v. Kraft Foods N. Am.*, 2006 U.S. Dist. LEXIS 3512 (E.D. Pa. Jan 31, 2006) (explaining that "consent after full disclosure is impossible in class actions," and therefore a putative class representative may not waive a conflict of interest on behalf of the unnamed class); *Palumbo v. Tele-Communications, Inc.*, 157 F.R.D. 129, 132-33 (D.D.C. 1994) ("Unidentified class members cannot waive a potential conflict of interest").

9

protect the class's interests when a potential conflict arises:   As counsel to parties to the litigation, class action counsel possess, in a very real sense, fiduciary obligations to those not before the court.   The ultimate responsibility of course is committed to the district court in whom, as the guardian of the rights of the absentees, is vested broad administrative, as well as adjudicative, power." *See Davis v. Kraft Foods N. Am.*, 2006 U.S. Dist. LEXIS 3512; 87 Empl. Prac. Dec. (CCH) P42,349 (E.D. Pa. 2006).   Since Plaintiff's goal is to pursue this matter as a class action, disqualification is appropriate.

**V.      Plaintiff's Counsel Cannot Cure the Conflict By Withdrawing From the Betancourt Case and Continuing to Represent the Morales Plaintiffs**

As predicted in Defendant's Motion, Plaintiff's Counsel now wishes to withdraw from the *Betancourt* case so it can continue to represent the *Morales* Plaintiffs.   [D.E. 27, P. 7] The *Morales* case obviously is the more remunerative of the two cases, as Mercantil employs substantially more non-exempt branch employees than managers, and the record evidence developed to date makes clear that the *Betancourt* Plaintiffs were properly classified as exempt employees.   Notwithstanding, the fact that the *Morales* case is the more remunerative of the two cases is not dispositive.   Plaintiff's counsel's proffered withdrawal from the Betancourt case violates the "hot potato rule," as explained in Defendant's Motion.   [D.E. 21, P.18-19] *See, e.g., Davis*, 2006 U.S. Dist. LEXIS 3512, *38; *Int'l Longshoremen's Ass'n, Local Union 1332 v. International Longshoremen's Ass'n*, 909 F. Supp. 287, 293 (E.D. Pa. 1995); *Pyle v. Meritor Sav. Bank*, 1993 U.S. Dist. LEXIS 16593, 1993 WL 483196, at *2 n.2 (E.D. Pa. Nov. 23, 1993) (disqualifying counsel from representing both parties and finding law firm may not undertake representation of two potentially adverse clients and then, when a conflict arises, choose between the clients); *Santacroce v. Neff*, 134 F. Supp. 2d 366, 370-71 (D.N.J. 2001) (applying "hot potato" rule to preclude law firm from dropping one client to avoid conflict with another client). Plaintiff makes no effort to dispute this fact aside from claiming there is no evidence the *Morales*

10

lawsuit is the more remunerative one, which obviously is the case.

### CONCLUSION

Plaintiff's Counsel's concurrent representation of both the *Betancourt* Plaintiffs and the *Morales* Plaintiffs unquestionably places them in an untenable position. Plaintiff's Counsel's arguments against the finding of a conflict, and their proposed actions to evade the conflict, only underscore the need for new counsel in this case. For all of the foregoing reasons, as well as the reasons set forth more fully in the Motion, Plaintiff's Counsel should be disqualified from representing the Plaintiffs in the instant case.

Dated: January 26, 2015
      Miami, Florida

Respectfully submitted,

By: s/ Jennifer A. Schwartz
David E. Block, Esq.
Fla. Bar No. 0108820
E-mail: *david.block@jacksonlewis.com*
Jennifer A. Schwartz, Esq.
Fla. Bar No. 502431
E-mail: *jennifer.schwartz@jacksonlewis.com*
JACKSON LEWIS P.C.
One Biscayne Tower
2 South Biscayne Boulevard, Suite 3500
Miami, FL 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466
*Counsel for Defendant*

### CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of January 2015, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

s/ Jennifer A. Schwartz
Jennifer A. Schwartz, Esq.

CASE NO.: 14-23881-CIV-MOORE/MCALILEY

## SERVICE LIST

**MORALES, ET AL. V. MERCANTIL COMMERCEBANK FLORIDA BANCORP INC. CASE NO.: 14-23881-CIV- MOORE/MCALILEY**

Anthony M. Georges-Pierre, Esq. (533637)
Email:*agp@rgpattorneys.com*
REMER & GEORGES-PIERRE, PLLC
44 West Flagler Street
Suite 2200
Miami, Florida 33130
Telephone: (305) 416-5000
Facsimile:  (305) 416-5005

David E. Block, Esq. (0108820)
Email: *david.block@jacksonlewis.com*
Jennifer A. Schwartz, Esq. (502431)
Email: *jennifer.schwartz@jacksonlewis.com*
Allison M. Gluvna, Esq. (041075)
Email: *allison.gluvna@jacksonlewis.com*
JACKSON LEWIS P.C.
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466

*Counsel for Plaintiff*
Served via transmission of Notices of
Electronic Filing generated by CM/ECF

*Counsel for Defendant*
Served via transmission of Notices of
Electronic Filing generated by CM/ECF